# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

-------------------------------------------------------------------------x

| | |
|---|---|
| PURDUE PHARMA L.P., PURDUE PHARMA INC., PURDUE PHARMA MANUFACTURING L.P., PURDUE PHARMACEUTICALS L.P., PURDUE TRANSDERMAL TECHNOLOGIES L.P., PURDUE PHARMACEUTICAL PRODUCTS L.P., PURDUE PHARMA OF PUERTO RICO, RHODES PHARMACEUTICALS L.P., RHODES TECHNOLOGIES, and AVRIO HEALTH L.P., | Adv. Pro. No. |

Plaintiffs.

-against-

AIG SPECIALTY INSURANCE COMPANY (F/K/A
AMERICAN INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY); ALLIED WORLD
ASSURANCE COMPANY, LTD.; AMERICAN
GUARANTEE AND LIABILITY INSURANCE COMPANY;
AMERICAN INTERNATIONAL REINSURANCE
COMPANY (F/K/A STARR EXCESS LIABILITY
INSURANCE INTERNATIONAL LIMITED); ARCH
REINSURANCE LTD.; ASPEN AMERICAN INSURANCE
COMPANY; CERTAIN MEMBER COMPANIES OF THE
INTERNATIONAL UNDERWRITING ASSOCIATION OF
LONDON SUBSCRIBING TO POLICY NO.
823/KE0002108; CHUBB BERMUDA INSURANCE LTD.
(F/K/A ACE BERMUDA INSURANCE LTD.); EVANSTON
INSURANCE COMPANY; GULF UNDERWRITERS
INSURANCE COMPANY; HDI GLOBAL SE (F/K/A

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

```
-----------------------------------------------------------------------------x
```
GERLING-KONZERN GENERAL INSURANCE
COMPANY); IRONSHORE SPECIALTY INSURANCE
COMPANY (F/K/A TIG SPECIALTY INSURANCE
COMPANY); LIBERTY INSURANCE CORPORATION;
LIBERTY MUTUAL FIRE INSURANCE COMPANY;
LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY
MUTUAL INSURANCE EUROPE SE (F/K/A LIBERTY
INTERNATIONAL INSURANCE COMPANY); NATIONAL
UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PA; NAVIGATORS SPECIALTY INSURANCE COMPANY;
NORTH AMERICAN ELITE INSURANCE COMPANY; ST.
PAUL FIRE AND MARINE INSURANCE COMPANY;
STEADFAST INSURANCE COMPANY; SWISS RE
INTERNATIONAL S.E. (F/K/A SR INTERNATIONAL
BUSINESS INSURANCE COMPANY; ALSO F/K/A
ZURICH REINSURANCE (LONDON) LIMITED);
TENECOM LIMITED (F/K/A WINTERTHUR SWISS
INSURANCE COMPANY); XL BERMUDA LTD. (F/K/A
XL INSURANCE COMPANY, LTD.); XL INSURANCE
AMERICA, INC.,

Defendants.

```
-----------------------------------------------------------------------------x
```

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs—who are (1) certain Debtors in these bankruptcy proceedings (the "Chapter 11

Cases"),[2] (2) the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases

(the "Official Committee"), and (3) the Ad Hoc Committee of Governmental and Other

Contingent Litigation Claimants in the Chapter 11 Cases (the "Ad Hoc Committee")—by and

through their undersigned attorneys, submit this Complaint for declaratory relief and damages

concerning insurance coverage provided to Debtors by the insurers named below ("Defendant

---

[2] With respect to the Debtors, only those that have been named as defendants in the Opioid Mass Tort Claims (as defined below) are Plaintiffs in this adversary proceeding (the "Debtor Plaintiffs"). The Debtor Plaintiffs are: Purdue Pharma L.P.; Purdue Pharma Inc.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Purdue Transdermal Technologies L.P.; Purdue Pharmaceutical Products L.P.; Purdue Pharma of Puerto Rico; Rhodes Pharmaceuticals L.P.; Rhodes Technologies; and Avrio Health L.P. (formerly known as Purdue Products L.P.). For ease of reference, this Complaint refers to the Debtor Plaintiffs simply as Debtors.

Insurers") under the insurance policies listed in Exhibit A hereto (the "Debtors' Insurance
Policies").  In support of their Complaint, Plaintiffs respectfully state and allege as follows:

## NATURE OF THE ACTION

1.      On September 15, 2019 (the "Petition Date"), each of the Debtors commenced
with this Court a voluntary case under chapter 11 of the Bankruptcy Code in response to the
staggering costs of litigating an increasing number of claims seeking to hold them liable for their
alleged role in creating and perpetuating the nationwide opioid crisis.  These claims were
brought by public and private claimants seeking damages due to injuries allegedly resulting
from: (1) opioid medications manufactured, marketed, or sold by Debtors and their affiliates,
(2) opioid medications manufactured, marketed, or sold by other pharmaceutical companies
rather than by Debtors or their affiliates, and (3) illicit opioid drugs, including heroin and
fentanyl, which were not manufactured, marketed, or sold by Debtors or their affiliates
(collectively, "Opioid Mass Tort Claims").[3]

2.      On September 26, 2019, the Office of the United States Trustee for Region 2
appointed the Official Committee pursuant to Bankruptcy Code section 1102(a) to act as a
fiduciary for and represent the interests of all unsecured creditors in the Chapter 11 Cases.[4]

3.      Prior to the Petition Date, the Debtors and certain shareholder parties reached an
agreement-in-principle (the "Settlement Framework") with 24 states, five U.S. territories, the
Plaintiffs' Executive Committee of *In re National Prescription Opiate Litigation*, Case No. 17-
md-02804, MDL No. 2804 (N.D. Ohio), and certain U.S. cities and counties (the "Settlement

---

[3] The term "Opioid Mass Tort Claims" includes both opioid-related claims filed against the Debtors before the
Petition Date and opioid-related claims submitted as part of the Chapter 11 Cases.
[4] *See Notice of Appointment of Official Committee of Unsecured Creditors*, ECF No. 131.

Group"). In September 2019, representatives of the Settlement Group formed the Ad Hoc

Committee. On December 2, 2019, the Court entered an order authorizing the Debtors to pay the

Ad Hoc Committee's counsel for "reasonable and documented fees and expenses."[5] That

authorization included the Ad Hoc Committee's retention of Gilbert LLP as "insurance counsel."

4.       On January 6, 2021, the Debtors, the Official Committee, and the Ad Hoc

Committee entered into a stipulation and agreed order granting joint standing to the

Official Committee and the Ad Hoc Committee to prosecute, together with the Debtors,

any and all claims, causes of action, disputes, or other matters regarding the Debtors'

insurance.[6] On January 20, 2021, this Court approved that stipulation and agreed order.[7]

This adversary proceeding is brought under the authority of that stipulation and agreed

order.

5.       As of the Petition Date, the Debtors had been named in over 2,760 Opioid

Mass Tort Claims, including lawsuits, subpoenas, and civil investigative demands across

the United States and its territories. By orders dated February 3, 2020 and June 3, 2020,

the Bankruptcy Court established 5:00 p.m. (Prevailing Eastern Time) on July 30, 2020,

as the deadline for filing proofs of claim in the Bankruptcy Cases ("Bar Date"), including

with respect to Opioid Mass Tort Claims.[8] More than 614,000 proofs of claim were filed

---

[5] *See Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Comm.'s Professionals*, ECF No. 553.

[6] *See Proposed Insurance Stipulation and Order*, ECF No. 2227-1.

[7] *Stipulation and Agreed Order Granting Joint Standing to Prosecute Claims and Causes of Action Related to the Debtors' Insurance Coverage to (1) the Official Committee of Unsecured Creditors, and (2) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants*, ECF No. 2305.

[8] *See Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof*, ECF No. 800; *Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof*, ECF No. 1221.

by the Bar Date.  Additional proofs of claim have continued to be submitted since the Bar Date.

6.      The Debtors' Insurance Policies provide sweeping coverage for claims against the Debtors seeking to hold the Debtors liable for injuries for which the Debtors are alleged to be responsible.  Coverage under the Debtors' Insurance Policies is subject to limits of liability, where applicable, of at least $3.3 billion.[9]  This coverage is in addition to the $1.9 billion in consolidated assets that Debtors disclosed under Local Rule 1007-2(a)(6) at the start of these Chapter 11 Cases, and to any value that the Debtors' estates will be able to secure on causes of action held by the Debtors' estates.

7.      The aggregate value of the Opioid Mass Tort Claims is not precisely known but on information and belief is more than sufficient to exhaust any applicable limits of liability of the Debtors' Insurance Policies.  Cumulatively, the proofs of claim assert damages in excess of $140 trillion.

8.      The proceeds of the Debtors' Insurance Policies constitute a significant asset of the Debtors' estates and are expected to be a valuable asset for purposes of the formulation and implementation of a plan of reorganization.

9.      In this adversary proceeding, Plaintiffs seek, under applicable law, an order (a) declaring the present and future rights, duties, and liabilities of Debtors and the Defendant Insurers under the Debtors' Insurance Policies with respect to the Opioid Mass Tort Claims, and (b) directing the Defendant Insurers to indemnify Debtors for, or pay on their behalf, damages suffered by Debtors arising out of the Opioid Mass Tort Claims.

---

[9] All dollar amounts in the complaint are approximate.

10.     Plaintiffs bring this action to give all parties in interest clarity about the scope of insurance coverage and the availability and amount of proceeds under the Debtors' Insurance Policies for or with respect to Opioid Mass Tort Claims; to enable parties in interest to advance ongoing negotiations regarding the structure and terms of a confirmable plan of reorganization and allocation of creditor recoveries under such a plan; and to secure all of the insurance proceeds to which Debtors are entitled with respect to the Opioid Mass Tort Claims.

## PARTIES

## I.     PLAINTIFFS

11.     Avrio Health L.P., f/k/a Purdue Products L.P., ("Avrio") is a Delaware limited partnership with its principal place of business in Connecticut.

12.     Purdue Pharma Inc. ("PPI") is a New York corporation with its principal place of business in Connecticut.

13.     Purdue Pharma L.P. ("PPLP") is a Delaware limited partnership with its principal place of business in Connecticut.

14.     Purdue Pharma Manufacturing L.P. ("Purdue Manufacturing") is a Delaware limited partnership with its principal place of business in Connecticut.

15.     Purdue Pharmaceutical Products L.P. ("Purdue Pharmaceutical") is a Delaware limited partnership with its principal place of business in Connecticut.

16.     Purdue Pharma of Puerto Rico ("Purdue Puerto Rico") is a Delaware general partnership with its principal place of business in Connecticut.

17.     Purdue Transdermal Technologies L.P. ("Purdue Transdermal") is a Delaware limited partnership with its principal place of business in Connecticut.

18.     Rhodes Pharmaceuticals L.P. ("Rhodes Pharma") is a Delaware limited partnership with its principal place of business in Rhode Island.

19.     Rhodes Technologies ("Rhodes Tech") (together with Rhodes Pharma, "Rhodes") is a Delaware general partnership with its principal place of business in Rhode Island.

20.     The Official Committee includes nine members: (i) Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services L.L.C. and CaremarkPCS Health, L.L.C.; (iii) Ryan Hampton; (iv) Cheryl Juaire; (v) LTS Lohmann Therapy Systems, Corp.; (vi) Pension Benefit Guaranty Corporation; (vii) Walter Lee Salmons; (viii) Kara Trainor; and (ix) West Boca Medical Center.  The Official Committee also includes three non-voting *ex officio* members: (x) Cameron County, Texas, which represents the interests of a group consisting of approximately 1,222 public and private entities allegedly harmed by Debtors' conduct; (y) the Cheyenne and Arapaho Tribes, which represent the interests of Native American tribes allegedly harmed by Debtors' conduct; and (z) Thornton Township, Illinois High School District No. 205, which represents the interests of independent public school districts allegedly harmed by Debtors' conduct.

21.     The Ad Hoc Committee consists of (i) ten States, (ii) the court-appointed Plaintiffs' Executive Committee in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No. 2804 (N.D. Ohio), (iii) six political subdivisions of States, and (iv) one federally recognized American Indian tribe. Collectively, the members of the Ad Hoc Committee hold or represent the interests of a substantial number and amount of the claims against Debtors.

## II.    DEFENDANT INSURERS

22.    Each of the Defendant Insurers is regularly and extensively engaged in the business of marketing, underwriting, selling, and handling claims concerning, and/or administering, insurance in the United States, such that it purposefully avails itself of the privilege of conducting activities within the United States, thereby invoking the benefits and protections of its laws.  In addition, each of the Defendant Insurers, either directly or through agents, engaged in activities in the United States in connection with the marketing, underwriting, sale, claims-handling, and/or administration of the Debtors' Insurance Policies it issued or subscribed for the benefit of Debtors, all of which are United States entities, which policies cover risks in the United States, and many of which policies contain United States (including New York) choice of law provisions.

23.    AIG Specialty Insurance Company (f/k/a American International Specialty Lines Insurance Company) ("AIG Specialty") is an Illinois corporation with its principal place of business in New York.  AIG Specialty is a Defendant Insurer to the full extent that the associated Debtors' Insurance Policy listed on Exhibit A was not released through a prior settlement agreement.

24.    Allied World Assurance Company, Ltd. ("Allied World") is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  The Debtors' Insurance Policies issued by Allied World were sold and provide coverage to United States entities, contain a New York choice-of-law provision, and cover risks in the United States. In connection with its marketing, underwriting, sale, claims-handling, and/or administration of these policies, Allied World corresponded and otherwise communicated with persons and entities in the United States, and accepted payments from United States entities.

25.     American Guarantee and Liability Insurance Company ("American Guarantee") is a New York corporation with its principal place of business in Illinois.

26.     American International Reinsurance Company (f/k/a Starr Excess Liability Insurance International Limited) ("American International Reinsurance") is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  The Debtors' Insurance Policy issued by American International Reinsurance was sold and provides coverage to United States entities, contains a New York choice-of-law provision, and covers risks in the United States.  In connection with its marketing, underwriting, sale, claims-handling, and/or administration of this policy, American International Reinsurance corresponded and otherwise communicated with persons and entities in the United States, and accepted payment from United States entities.

27.     Arch Reinsurance Ltd. ("Arch Reinsurance") is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  The Debtors' Insurance Policies issued by Arch Reinsurance were sold and provide coverage to United States entities, contain a New York choice-of-law provision, and cover risks in the United States.  In connection with its marketing, underwriting, sale, claims-handling, and/or administration of these policies, Arch Reinsurance corresponded and otherwise communicated with persons and entities in the United States, and accepted payments from United States entities.

28.     Aspen American Insurance Company ("Aspen") is a Texas corporation with its principal place of business in Connecticut.

29.     Certain Member Companies of the International Underwriting Association of London Subscribing to Policy No. 823/KE0002108 ("London") consists of corporations or other business entities existing under the laws of the United Kingdom, the United States, and/or other

sovereign powers that have subscribed to one or more insurance policies sold to one or more

Plaintiffs.  The subscribing companies include, but are not limited to, Winterthur Swiss

Insurance Company, Ace Insurance S.A. N.V., New Hampshire Insurance Company (per AIG

Europe (UK) Ltd.), the Underwriter Insurance Company Limited, SR International Business

Insurance Company Ltd., and QBE International Insurance Limited.  The Debtors' Insurance

Policy issued by London was sold and provides coverage to United States entities, contains a

New York choice-of-law provision, covers risks in the United States, and lists as the "Risk

Management Address" 100 Connecticut Ave., Norwalk, CT 06859.  In connection with its

marketing, underwriting, sale, claims-handling, and/or administration of this policy, London

corresponded and otherwise communicated with persons and entities in the United States, and

accepted payments from United States entities.

   30. Chubb Bermuda Insurance Ltd. (f/k/a ACE Bermuda Insurance Ltd.) ("Chubb

Bermuda") is a corporation organized under the laws of Bermuda with its principal place of

business in Bermuda.  The Debtors' Insurance Policy issued by Chubb Bermuda was sold and

provides coverage to United States entities, contains a New York choice-of-law provision, and

covers risks in the United States.  In connection with its marketing, underwriting, sale, claims-

handling, and/or administration of this policy, Chubb Bermuda corresponded and otherwise

communicated with persons and entities in the United States, retained United States counsel, and

accepted payments from United States entities.

   31. Evanston Insurance Company ("Evanston") is an Illinois corporation with its

principal place of business in Illinois.

   32. Gulf Underwriters Insurance Company ("Gulf Underwriters") is a Connecticut

corporation with its principal place of business in Connecticut.  Gulf Underwriters is a Defendant

Insurer to the full extent that the associated Debtors' Insurance Policy listed on Exhibit A was not released through a prior settlement agreement.

33.    HDI Global SE (f/k/a Gerling-Konzern General Insurance Company) ("HDI Global") is a European company registered in accordance with European law with its principal place of business in Germany.  The Debtors' Insurance Policies were issued by Gerling Konzern General Insurance Company (aka Gerling Konzern Allgemeine Versicherungs) ("Gerling"), a company registered in Germany.  HDI Gerling Insurance Company (aka HDI-Gerling Industrie Verischerung AG) was the legal successor to Gerling, having acquired that company in September 2006, and has been renamed HDI Global SE.  For ease of reference, Gerling Konzern General Insurance Company, Gerling Konzern Allgemeine Versicherungs, HDI Gerling Insurance Company, HDI-Gerling Industrie Verischerung AG, and HDI Global SE are all referred to as "HDI Global."  The Debtors' Insurance Policies issued by HDI Global were sold and provide coverage to United States entities, contain a New York choice-of-law provision, and cover risks in the United States.  In connection with its marketing, underwriting, sale, claims-handling, and/or administration of these policies, HDI Global corresponded and otherwise communicated with persons and entities in the United States, accepted payment from United States entities, had an in-house lawyer in the United States monitor litigation and authorize settlements, retained outside counsel in the United States to review defense bills prior to reimbursement, and wired payments to the policyholders in the United States.

34.    Ironshore Specialty Insurance Company (f/k/a TIG Specialty Insurance Company) ("Ironshore") is an Arizona corporation with its principal place of business in New York.

35.    Liberty Insurance Corporation ("Liberty Insurance") is an Illinois corporation with its principal place of business in Massachusetts.

36.    Liberty Mutual Fire Insurance Company ("Liberty Mutual Fire") is a Wisconsin corporation with its principal place of business in Massachusetts.

37.    Liberty Mutual Insurance Company ("Liberty Mutual Insurance") is a Massachusetts corporation with its principal place of business in Massachusetts.

38.    Liberty Mutual Insurance Europe SE (f/k/a Liberty International Insurance Company) ("Liberty Europe") is a company organized under the laws of Luxembourg with its principal place of business in Luxembourg.  The Debtors' Insurance Policy issued by Liberty Europe was sold and provides coverage to United States entities, contains a New York choice-of-law provision, and covers risks in the United States.  In connection with its marketing, underwriting, sale, claims-handling, and/or administration of this policy, Liberty Europe corresponded and otherwise communicated with persons and entities in the United States, and accepted payment from United States entities.

39.    National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a Pennsylvania corporation with its principal place of business in New York.

40.    Navigators Specialty Insurance Company ("Navigators") is a New York corporation with its principal place of business in Connecticut.

41.    North American Elite Insurance Company ("NA Elite") is a New Hampshire corporation with its principal place of business in Missouri.

42.    St. Paul Fire and Marine Insurance Company ("St. Paul") is a Connecticut corporation with its principal place of business in Connecticut.

43.    Steadfast Insurance Company ("Steadfast") is a Delaware corporation with its principal place of business in Illinois.  Steadfast is a Defendant Insurer to the full extent that the

associated Debtors' Insurance Policy listed on Exhibit A was not released through a prior
settlement agreement

44.     Swiss Re International S.E. (f/k/a SR International Business Insurance Company;
also f/k/a Zurich Reinsurance (London) Ltd.) ("Swiss Re") is a corporation organized under the
laws of Luxembourg with its principal place of business in Europe and branch offices in
Switzerland, the United Kingdom, Germany, and the Netherlands.  The Debtors' Insurance
Policies issued by Swiss Re were sold and provide coverage to United States entities, contain a
New York choice-of-law provision, and cover risks in the United States.  In connection with its
marketing, underwriting, sale, claims-handling, and/or administration of this policy, Swiss Re
corresponded and otherwise communicated with persons and entities in the United States, and
accepted payment from United States entities.

45.     Tenecom Limited (f/k/a Winterthur Swiss Insurance Company) ("Tenecom") is
the successor under United Kingdom law to Winterthur Swiss Insurance Company, and is an
insurance company organized under the laws of the United Kingdom with its principal place of
business in the United Kingdom.  The Debtor's Policy issued by Tenecom was sold and provides
coverage to United States entities, contains a New York choice-of-law provision, and covers
risks in the United States.  In connection with its marketing, underwriting, sale, claims-handling,
and/or administration of this policy, Tenecom corresponded and otherwise communicated with
persons and entities in the United States, and accepted payment from United States entities.
Tenecom is a Defendant Insurer to the full extent that the associated Debtors' Insurance Policy
listed on Exhibit A was not released through a prior settlement agreement.

46.     XL Bermuda Ltd. (f/k/a XL Insurance Company, Ltd.) ("XL Bermuda") is a
corporation organized under the laws of Bermuda with its principal place of business in

Bermuda.  The Debtors' Insurance Policy issued by XL Bermuda was sold and provides

coverage to United States entities, contains a New York choice-of-law provision, and covers

risks in the United States.  In connection with its marketing, underwriting, sale, claims-handling,

and/or administration of this policy, XL Bermuda corresponded and otherwise communicated

with persons and entities in the United States, accepted payments from United States entities,

retained United States counsel in connection with claims, and assigned claims persons in the

United States to process defense costs and settlement reimbursements.

47.     XL Insurance America, Inc. ("XL America") is a Delaware corporation with its

principal place of business in Connecticut.

## JURISDICTION AND VENUE

48.     This Adversary Proceeding relates to the matter of *In re Purdue Pharma L.P.*, No.

19-23649 (RDD), pending before the United States Bankruptcy Court for the Southern District of

New York.

49.     This Adversary Proceeding is brought pursuant to 11 U.S.C. § 541 and

Rules 7001(1) and 7001(9) of the Federal Rules of Bankruptcy Procedure to obtain a declaratory

judgment regarding recovery of the proceeds of Debtors' Insurance Policies, which constitute

property of the Debtors' estates.

50.     The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.

51.     The insurance policies and the proceeds at issue are property of the Debtors'

estates within the meaning of 11 U.S.C. § 541(a).  This is a core proceeding pursuant to 28

U.S.C. §§ 157(b)(2)(A) and (O) for the following reasons, among others:

    a.       The proceeds from the disputed insurance coverage are, collectively, a very substantial asset of the Debtors' estates.

    b.       Because coverage under the Debtors' Insurance Policies is, collectively, one of the significant assets of the Debtors' estates, the resolution of the Debtors' claims against the Defendant Insurers is likely to affect the core bankruptcy function of allocating and distributing the Debtors' value among Debtors' creditors.

    c.       The only alternative—piecemeal litigation of each policy—is at odds with the core policies of the Code:  preservation of estate value and equitable distribution.  Such piecemeal litigation risks inconsistent results, delay, and can only be expected to increase the costs to the estates, to all creditors, and to the Defendant Insurers.

Accordingly, disposition of this Adversary Proceeding will have a significant impact on the administration of the Debtors' estates and these Chapter 11 Cases.

52.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

53.     This Court may exercise personal jurisdiction over Defendant Insurers for the reasons set forth in paragraph 22, and paragraphs 23-47, and pursuant to Federal Rule of Bankruptcy Procedure 7004(f).

54.     Plaintiffs consent to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

### I.   THE UNDERLYING CLAIMS

55.    The Opioid Mass Tort Claims allege that, at all pertinent times, Debtors manufactured, marketed, and sold opioid medications, including those referenced below.

56.    The Debtors' opioid medications for the treatment of chronic pain are classified by the Drug Enforcement Agency as Schedule II or Schedule III medications because the medications carry significant risks, including risks of addiction, abuse, and misuse.  The labeling approved for these medications by the Food and Drug Administration ("FDA") warns, including through "black box" warnings, of the risks of addiction, abuse, and misuse.

57.    The Opioid Mass Tort Claims allege, among other things, that Debtors—along with the co-defendants in the underlying proceedings—engaged in a marketing campaign that resulted in a significant increase in the number of opioid medications prescribed nationwide.[10] The Opioid Mass Tort Claims assert that this led to a substantial increase in the number of people seeking and obtaining prescriptions for opioid medications manufactured by Debtors and other manufacturers not affiliated with Debtors, and caused patients to become addicted to and abuse opioid medications manufactured by Debtors and by other manufacturers not affiliated with Debtors, as well as illicit opioid drugs, and to suffer bodily injury (including death) ("bodily injury") as a result.

58.    The Opioid Mass Tort Claims seek to hold the Debtors liable for damages due to bodily injury allegedly caused by (1) opioid medications manufactured, marketed, or sold by

---

[10] In February 2018, Debtors stopped promoting opioid medications to prescribers through sales representative and other channels.  In addition, Debtors subjected themselves to the enforcement powers of the Bankruptcy Court through the voluntary injunction Debtors sought as part of the preliminary injunction issued by the Bankruptcy Court on November 6, 2019, that prohibits Debtors from engaging in various promotional and other activities relating to opioid medications.

Debtors and their affiliates, including Debtors' branded opioid medications such as OxyContin, Hysingla ER, and Butrans, and Debtors' generic forms of opioid medications such as buprenorphine transdermal system, oxycodone extended- and immediate-release tablets, morphine extended release tablets, and hydromorphone immediate-release tablets; (2) opioid medications manufactured, marketed, or sold by other pharmaceutical companies rather than by Debtors or their affiliates; and (3) illicit opioid drugs, including heroin and fentanyl, which were not manufactured, marketed, or sold by Debtors or their affiliates.

59.     The Opioid Mass Tort Claims include claims brought by individuals (or in the case of decedents, their estates) seeking damages due to bodily injury for which they allege Debtors are liable.  They also include claims brought by certain public and private entities seeking damages due to opioid-related bodily injury suffered by their citizens, patients, insureds, and others.  For example, thousands of Opioid Mass Tort Claims have been asserted by governmental entities, including states, cities, and counties across the country, seeking damages including the costs of public services allegedly incurred as a result of bodily injury caused by Debtors' alleged actions.  Similarly, numerous healthcare providers and healthcare plans have asserted Opioid Mass Tort Claims seeking damages related to increased costs of healthcare due to bodily injury allegedly caused by Debtors' actions.

## II.     THE BANKRUPTCY PROCEEDINGS

60.     On September 15, 2019, in response to the threat posed by the staggering costs of litigating an ever-increasing number of Opioid Mass Tort Claims, each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

61.     Given the large number and magnitude of Opioid Mass Tort Claims and the necessity of marshalling and liquidating assets to compensate claimants for such claims, it is

anticipated that the Debtors' bankruptcy proceedings will result in the creation of one or more trusts or other entities that will together receive assets of the Debtors' estates, including proceeds of the Debtors' Insurance Policies, and distribute those assets to Debtors' creditors pursuant to the terms of their applicable formation documents.

62.     Debtors' summary of (unaudited) consolidated assets and liabilities submitted under Local Rule 1007-2(a)(6) at the commencement of these Chapter 11 Cases lists $1.9 billion in assets, not including any potential recoveries from the Debtors' Insurance Policies which have in excess of $3.3 billion in limits of liability, where applicable, or from causes of action against the shareholder parties and others held by the Debtors' estates.

## III.     THE DEBTORS' INSURANCE COVERAGE

63.     The Debtors' Insurance Policies cover periods between 2001 and 2018.  The issuing insurers, policy numbers, and policy periods of the Debtors' Insurance Policies are listed in Exhibit A hereto, which is hereby incorporated by reference as if fully set forth herein.

64.     Debtors possess copies of each of the Debtors' Insurance Policies or information concerning each policy sufficient to establish Defendant Insurers' coverage obligations under such policy.  Upon information and belief, Defendant Insurers possess copies of Debtors' Insurance Policies or information regarding Debtors' Insurance Policies that are at least equal to that possessed by Debtors.  The Debtors' Insurance Policies are voluminous and thus it would be too burdensome to attach them to this Complaint.

65.     The Debtors' Insurance Policies contain standard-form wording supplied by the Defendant Insurers.  Debtors are entitled to have the Debtors' Insurance Policies interpreted or construed in a manner that maximizes insurance protection for the Opioid Mass Tort Claims. Provisions of the Debtors' Insurance Policies that grant or extend coverage must be construed

18

broadly in favor of coverage for the Debtors, and provisions that purport to exclude or limit coverage must be construed narrowly against the Defendant Insurers.  Any ambiguity in the language or application of the Debtors' Insurance Policies must be resolved against the Defendant Insurers and in favor of coverage for the Opioid Mass Tort Claims.

66.    Debtors' Insurance Policies each promise, without limitation and with varying wording, to indemnify Debtors for, or to pay on Debtors' behalf:

a.    damages and associated defense costs that Debtors become legally obligated to pay on account of bodily injury during the policy period;

b.    damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that occurs during the policy period that is caused by an occurrence;

c.    damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that is within the products-completed operations hazard for claims made during the policy period;

d.    damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that is outside the products-completed operations hazard for claims made during the policy period;

e.    damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that is caused by an occurrence, for claims made during the policy period; or

f.    damages and associated defense costs that Debtors become legally obligated to pay as a result of bodily injury arising out of pharmaceuticals sold by Debtors for claims made during the policy period.

67.     The Debtors' Insurance Policies provide insurance coverage to the Debtors, including for the Debtors' liability for the Opioid Mass Tort Claims.  The Opioid Mass Tort Claims trigger coverage under the terms and conditions of the Debtors' Insurance Policies because, without limitation, the Opioid Mass Tort Claims have imposed, or seek to impose, liability on the Debtors on account of or because of:

a.     damages and associated defense costs that Debtors become legally obligated to pay on account of bodily injury during the policy period;

b.     damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that occurs during the policy period that is caused by an occurrence;

c.     damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that is within the products-completed operations hazard for claims made during the policy period;

d.     damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that is outside the products-completed operations hazard for claims made during the policy period;

e.     damages and associated defense costs that Debtors become legally obligated to pay because of bodily injury that is caused by an occurrence, for claims made during the policy period; and

f.     damages and associated defense costs that Debtors become legally obligated to pay as a result of bodily injury arising out of pharmaceuticals sold by Debtors for claims made during the policy period.

68.    Each Defendant Insurer is jointly and severally obligated, under each such Debtors' Insurance Policy it issued or to which it subscribed, to provide coverage in full to the Debtors for the Debtors' liability for the Opioid Mass Tort Claims, subject only to applicable attachment points, limits of liability, and policy triggers (e.g., whether it is occurrence-based or claims-made), and applicable law.

69.    The total limits of liability of the Debtors' Insurance Policies exceed $3.3 billion, where applicable.  The liability faced by the Debtors, on account of the Opioid Mass Tort Claims, dwarfs the available limits of the Policies.

70.    Each of Debtors' Insurance Policies provides, and applicable law confirms, that the Defendant Insurers' obligations are not diminished in the event of the insured's insolvency or bankruptcy.

71.    All applicable conditions precedent to coverage or recovery under the Debtors' Insurance Policies, if any, have been satisfied, compliance with such conditions precedent is excused, such conditions precedent do not apply, or Defendant Insurers have waived or are estopped or otherwise precluded from relying on such conditions precedent.

72.    Defendant Insurers sold the Debtors' Insurance Policies to Debtors and their affiliates in consideration of substantial premiums.  Debtors and their affiliates have paid any and all necessary premiums for the Debtors' Insurance Policies.

73.    Each of the Debtors' Insurance Policies has been in full force and effect since it was sold to Debtors and their affiliates, including at all times material to this Complaint.

74.    No exclusions or limitations in the Debtors' Insurance Policies (other than any applicable attachment points, limits of liability, and the policy triggers) apply to coverage for the Opioid Mass Tort Claims.

75.    Certain of the Debtors' Insurance Policies do not apply to bodily injury within the products-completed operations hazard.  However, the Opioid Mass Tort Claims include (but are not limited to) allegations that fall outside the products-completed operations hazard.  The products-completed operations hazard is comprised of claims arising out of goods or products manufactured, marketed, or sold by the Debtors.  The Opioid Mass Tort Claims seek to hold Debtors liable with respect to bodily injury caused by, among other things, (A) opioid medications that were manufactured, marketed, or sold by other pharmaceutical companies rather than by Debtors or their affiliates, and, (B) illicit opioid drugs, including heroin and fentanyl, which were not manufactured, marketed, or sold by Debtors or their affiliates.  To the extent that they do so, the Opioid Mass Tort Claims are not barred by the products-completed operations hazard exclusion of the Debtors' Insurance Policies.

**COUNT ONE:  DECLARATORY JUDGMENT (ALL DEFENDANTS)**

76.    Debtors incorporate the foregoing paragraphs as if fully set forth herein.

77.    Defendant Insurers have disputed, declined, or failed to perform fully their coverage obligations with respect to the Opioid Mass Tort Claims or, upon information and belief, will dispute, decline, or fail to perform fully these obligations.

78.    Declaratory relief regarding the scope of coverage for the Opioid Mass Tort Claims under the Debtors' Insurance Policies will clarify the assets available under any plan of reorganization to pay Debtors' creditors.  The value of the assets available for distribution to creditors is central to the formulation and implementation of a successful plan of reorganization.

79.    Debtors assert and seek a declaratory judgment that each of the Defendant Insurers is obligated under each of the Debtors' Insurance Policies, and each policy period of the Debtors' Insurance Policies listed on Exhibit A, to provide coverage in full for the Opioid Mass

22

Tort Claims that trigger the coverage obligations of the policy in question, subject only to any applicable attachment points and any applicable limits of liability.

80.     The requested declaratory relief will terminate some or all of the controversy between Debtors and the Defendant Insurers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment against Defendant Insurers as follows:

a.     Declaring the rights and obligations of Debtors and the Defendant Insurers under the Debtors' Insurance Policies with respect to the Opioid Mass Tort Claims;

b.     Awarding money damages that have accrued as of the time of trial as a result of the Court's declaration of Debtors' entitlement to coverage under the Debtors' Insurance Policies with respect to the Opioid Mass Tort Claims;

c.     Awarding costs of suit;

d.     Awarding reasonable attorneys' fees incurred in prosecuting this action;

e.     Awarding prejudgment interest;

f.     Awarding post-judgment interest; and

g.     Providing such other and further relief to which this Court may deem Plaintiffs to be justly entitled.

Dated: New York, New York
January 29, 2021

| | |
|---|---|
| REED SMITH LLP<br><br> /s/ Paul E. Breene<br>Paul E. Breene<br>Ann V. Kramer<br>Anthony B. Crawford<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 521-5400<br>pbreene@reedsmith.com<br>akramer@reedsmith.com<br>acrawford@reedsmith.com<br><br>*Counsel to Debtors* | COLE SCHOTZ P.C.<br><br> /s/ Justin R. Alberto<br>Justin R. Alberto (admitted pro hac vice)<br>500 Delaware Avenue, Suite 1410<br>Wilmington, Delaware 19801<br>(302) 655-5000<br>jalberto@coleschotz.com<br><br><br><br><br><br>*Efficiency Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al.* |
| GILBERT LLP<br><br> /s/ Scott D. Gilbert<br>Scott D. Gilbert (admitted pro hac vice)<br>Richard J. Leveridge<br>Richard Shore (admitted pro hac vice)<br>Jenna A. Hudson (admitted pro hac vice)<br>700 Pennsylvania Ave, SE, Suite 400<br>Washington, DC 20003<br>(202) 772-2200<br>gilberts@gilbertlegal.com<br>leveridger@gilbertlegal.com<br>shorer@gilbertlegal.com<br>hudsonj@gilbertlegal.com<br><br>*Counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants* | |